UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LINDA S. ISAACS ) | Case No. 14-50679 |
| Debtor ) | Chapter 13 |
| ) | |
| LINDA S. ISAACS ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | Case No. 14-05021 |
| DBI-ASG COINVESTOR FUND III, LLC, et al. ) | Adversary Proceeding |
| Defendants ) | |

### **MEMORANDUM-OPINION**

This matter comes before the Court on parties' cross-motions for summary judgment. Plaintiff Linda S. Isaacs ("Isaacs" or "Debtor") filed this adversary proceeding against Defendant DBI-ASG Coinvestor Fund III, LLC, ("DBI" or "Defendant") seeking to avoid a lien allegedly held by DBI as successor in interest to GMAC Mortgages ("GMAC" or "Creditor"). The parties have stipulated to the relevant facts but disagree as to the proper legal analysis.

Debtor argues that because GMAC had not recorded a second mortgage acquired by Debtor in 2002 (the "Second Mortgage") by the time Isaacs filed her Chapter 7 petition, under the express terms of the Second Mortgage, the lien did not attach to the real estate, rendering the debt unsecured. As a result, that debt was subject to the discharge order. In response, DBI argues that the Second Mortgage created an equitable lien, despite GMAC's failure to record it. DBI also cites a Lyon County, Kentucky, Circuit Court (the "Circuit Court") default judgment from 2014, purporting to validate the Second Mortgage. Defendant maintains that this Court lacks jurisdiction to review the Circuit Court judgment and asks that collateral estoppel be applied.

1

As discussed below, this Court finds that the debt in question was unsecured by virtue of GMAC's failure to record the Second Mortgage prior to Debtor's petition and that it was discharged at the time Debtor concluded her 2004 Chapter 7 case. The Circuit Court judgment served as an improper modification of this Court's discharge order, and, as a result, the *Rooker–Feldman* doctrine does not apply. This Court, therefore, grants summary judgment in favor of Debtor and finds the Circuit Court judgment void *ab initio* as it relates to the debt in question.

This Court also finds that Defendant violated both the automatic stay, when it recorded the Second Mortgage post-petition, and the discharge injunction, when it brought a foreclosure action in Circuit Court seeking to enforce the discharged liability.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## Undisputed Facts

The parties have entered into joint stipulation that provides, in pertinent part, the following facts: On February 5, 2003, Isaacs and her husband executed a home equity line of credit with GMAC Mortgages ("GMAC"), to be secured by a second mortgage on their homestead property located at 494 Hwy 819, in Kuttawa, KY (the "Second Mortgage"). On page two of the Second Mortgage, under a section labeled "Priority of Advances," it states: "The lien of this Mortgage will attach on the date this Mortgage is recorded." The property was also encumbered by a first mortgage, previously executed by GMAC.

On March 19, 2004, Isaacs filed for Chapter 7 bankruptcy relief in the Western District of Kentucky. Isaacs listed both the first and second mortgages on Schedule D of the bankruptcy petition. On June 22, 2004, over three months later, GMAC recorded the Second Mortgage. On July 1, 2004, Isaacs and GMAC reaffirmed the first mortgage, and on July 12, 2004, Isaacs

obtained a discharge. In 2006, the bankruptcy case was closed. At no time during the bankruptcy proceeding did GMAC obtain an order to modify, lift, or annul the automatic stay.

Following the close of the 2004 Chapter 7 case, GMAC transferred its interest in the Second Mortgage to RoundPoint Mortgage Servicing Corporation ("RoundPoint"). On April 10, 2014, RoundPoint initiated a foreclosure on the Isaacs' property located at 494 Hwy 819. About four months later, on August 22, 2014, a default judgment was entered finding the Second Mortgage valid, and a sale date was set for September 30, 2014. On September 29, 2014, Isaacs filed a petition for relief under Chapter 13 of the Bankruptcy Code.

On October 9, 2014, Debtor filed this adversary proceeding against Defendants RoundPoint and Wingspan Portfolio Advisors, LLP ("Wingspan"). Wingspan was an assignee of Roundpoint that took over as loan servicer after RoundPoint filed its foreclosure complaint. On January 3, 2015, this Court granted an agreed motion to dismiss RoundPoint as a party to this adversary proceeding. On July 24, 2015, Defendant DBI was substituted for Wingspan. Debtor and DBI filed cross-motions for summary judgment seeking to determine the validity of the Second Mortgage lien.

## Legal Analysis

As an initial matter, the Court finds Debtor has derivative standing to bring this claim, pursuant to 11 U.S.C. § 544. The Sixth Circuit has held debtors may be granted standing derivative of the trustee's avoidance powers. *See In re Barbee*, 461 B.R. 711, 715 (B.A.P. 6th Cir. 2011). Debtor was granted standing by order of this Court entered May 27, 2015.[1]

---

[1] Although Defendant asserts Debtor's non-filing husband is an indispensable party to the ensuing litigation, it has offered no legal support whatsoever for this bare allegation. Nonetheless, after reviewing Rule 19 of the Federal Rules of Civil Procedure, the Court finds Mr. Isaacs is not a required party.

3

"In considering a motion for summary judgment, the question presented to this Court is whether there is 'no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.'" *In re Kennedy*, 243 B.R. 1, 6 (Bankr. W.D. Ky. 1997) (citing Fed.R.Civ.P. 56(c)). "[T]he judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "[T]he inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion." *Kennedy*, 243 B.R. at 6. If a question of material fact remains, the motion must be denied.

In the case at hand, the parties do not dispute the material facts, but they apply a number of varied and divergent legal theories to those facts. A careful and detailed review of those facts and the appropriate law, however, leads this Court to a simple initial conclusion: at the time Debtor filed her Chapter 7 bankruptcy petition in 2004, the security interest purportedly granted by the Second Mortgage had not *attached* to the property in question.

"The principal security instrument used in home mortgage transactions in Kentucky is the mortgage." 1 Res. Mort. Lend. State Reg. Man. S. E. Ky. Mort. Lend. § 2:34. The Second Mortgage at issue constitutes a "Mortgage for Future Advances," as indicated by the document title and its terms, which provide:

> This is a line of credit mortgage. … The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement.

The Second Mortgage also contains the following provision: "The lien of this Mortgage will attach on the date this Mortgage is recorded." A mortgage for future advances is governed by Kentucky Revised Statutes § 382.385, which provides:

4

> Any mortgage of real property may secure payment of any or all sums due and payable by the debtor under a line of credit or under a revolving credit plan if the mortgage:
>
> 1. States, in substance or effect, that the parties intend that the mortgage secures the line of credit or revolving credit plan;
>
> 2. Specifies the maximum principal amount of credit which may be extended under the line of credit or the maximum credit limit of the revolving credit plan which, in each case, may be outstanding at any time or times under the line of credit or plan, and which is to be secured by the mortgage.

Ky. Rev. Stat. Ann. § 382.385(2)(a)(1-2) (West).

As an initial matter, the Court recognizes that "future advance clauses … are valid in Kentucky." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 833 (Ky. Ct. App. 2000). "[A] mortgage may be drafted, if given in good faith, so as to secure future extensions and renewals as well as a present debt." *Bank of Maysville v. Brock, Ky.*, 375 S.W.2d 814, 816 (Ky.1964). "It is sufficient if the mortgage clearly shows it is to stand as security for both an original loan and for such additional indebtedness as may arise from future dealings between the parties." *Brock*, 375 S.W.2d at 816.

Turning to the Second Mortgage's terms, it is important to note that "a mortgage is essentially a contract between the borrower and lender, and as such the rules of contract interpretation apply to our review of the language of a mortgage." *West*, 55 S.W.3d at 835.[2] "It is well settled that the interpretation of contracts is an issue of law for the court to decide." *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 886 (E.D. Ky. 2014). "A fundamental

---

[2] Defendant's reliance on KRS § 355.9-203 is misplaced. As the statute itself makes clear, real property is exempt from the scope of Article 9. Ky. Rev. Stat. Ann. § 355.9-109(4)(k) (West). *See also In re Jones*, 186 B.R. 71, 77 (Bankr. W.D. Ky. 1995) ("[T]he granting of an interest in *real* property, … is specifically exempted from the scope of Article 9."). Even if Article 9 did apply, § 355.9-203(1) provides: "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, *unless an agreement expressly postpones the time of attachment*." Ky. Rev. Stat. Ann. § 355.9-203 (West) (emphasis added). Here, the Second Mortgage expressly postpones attachment to the time of recordation.

rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Mortgage Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008).

Where the parties execute a written instrument, it "must be construed in accordance with the intention of the parties. The court must seek to ascertain how the parties intended their agreement to operate at the time they entered into it." *Journey Acquisition-II*, 39 F. Supp. 3d at 887 (internal citations omitted). In doing so, "the Court must read the various provisions of the contract as a whole, and should look to interpretations that 'promote harmony' between any apparently conflicting provisions." *Id.* (citing *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky.1974)). "Specific terms and exact terms are given greater weight than general language; ... [and] separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated." *Id.* (citing Restatement (Second) of Contracts 203(c), (d) (1979)). "[A]n interpretation of the contract that gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Id.* (internal citations omitted).

"Determining whether a contract is ambiguous is a question of law for the court to decide." *Id.* (citing *West*, 55 S.W.3d at 835). "If there is no ambiguity, the court's analysis extends only to the four corners of the contract to determine the parties' intention." *Id.* (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky.2000)). "An unambiguous written contract 'will be enforced strictly according to its terms,' and the court will interpret those terms 'by assigning language its ordinary meaning and without resort to extrinsic evidence.'" *Id.* at 886 (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105–06 (Ky.2003)).

Here, the Second Mortgage contains standard granting language, wherein "borrower irrevocably mortgages, grants and conveys" to the lender. However, it also contains specific, added language that expressly postpones the time of attachment from the date the Second Mortgage is executed to an unspecified date when it might be recorded. On page two of the agreement, under a section titled "Priority of Advances," the Second Mortgage provides, "The lien of this Mortgage will attach on the date this Mortgage is recorded." Reading the agreement as a whole, the Court is required to give greater weight to this specific provision about attachment than to the general terms of conveyance. Moreover, according to its ordinary meaning, the language of that added provision is unambiguous, and the contract must be enforced strictly in accordance with that provision. Thus, it must be construed that at the time of execution, the parties did not intend immediate attachment but intended attachment to occur at the time the Second Mortgage was recorded.

Even if this Court determined that ambiguity exists, the law is clear that "ambiguous language should generally be construed against the drafter." *Journey Acquisition-II*, 39 F. Supp. 3d at 890 (citing *United States v. Seckinger*, 397 U.S. 203, 210 (1970)). This makes sense, because the drafter is the party that creates the terms and is in the best position to know those terms. Here, if the Court were to interpret the Second Mortgage against GMAC and to the benefit of Debtor, the result would be the same: it would find that the parties intended attachment to occur not at execution but if and when the Second Mortgage was recorded. As a result, because GMAC had not recorded on March 19, 2004, when Isaacs filed for Chapter 7 protection, the lien had not attached.

DBI contends that despite the contract language and GMAC's failure to record the Second Mortgage, the agreement between the parties created an equitable lien that attached upon the

7

exchange of value. In support of its argument, DBI cites *In re Akers*, 427 B.R. 408, 410 (Bankr. W.D. Ky. 2010), where the court found an equitable lien existed despite creditor's failure to perfect. There, debtor granted creditor a lien on her mobile home where a lien existed on the underlying property. *Id.* The record established debtor's clear intent to make the mobile home part of the real estate collateral. *Id.* Creditor only failed to perfect its lien on the mobile home when debtor failed to surrender the Certificate of Title as she had promised. *Id.* at 411. In finding an equitable lien, the court noted that creditor "diligently tried to perfect its interest in the Manufactured Home according to Kentucky law." *Id.* When debtor failed to surrender the Certificate of Title, creditor acted swiftly to obtain a default judgment and duplicate title. *Id.*

Kentucky law does recognize equitable liens, "which attach upon the advancement of money." *Akers*, 427 B.R. at 410 (citing *State Street Bank & Trust Co. of Boston v. Heck's, Inc.*, 963 S.W.2d 626, 630 (Ky.1998)). However, a "court of equity does not create the lien, but only recognizes and enforces it." *State St. Bank*, 963 S.W.2d at 631. "An equitable lien may arise from two sources: (1) A written contract which shows any intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right or justice as applied to the relations of the parties and the circumstances of their dealings in the particular case." *Owensboro Banking Co. v. Lewis*, 269 Ky. 277, 106 S.W.2d 1000, 1004 (1937).

Here, unlike in *Akers*, the security agreement did not demonstrate an intent to create a debt at the time of execution. To the contrary, the contract expressly states that the lien would not attach until the Second Mortgage was recorded. Further, GMAC's conduct does not warrant equitable relief when the Court considers the circumstances of the parties' dealings. GMAC alone had the power to finalize attachment, and the failure to attach is the fault of GMAC and GMAC alone.

GMAC was the very opposite of diligent, waiting more than a year to record the Second Mortgage.[3] Such an egregious delay may have resulted from mistake at best or laziness at worst—either way, it does not demonstrate the kind of blamelessness that would demand equitable relief. The agreement language, as drafted by GMAC, was clear and controlling; to reward DBI for GMAC's failure to follow that agreement would be a misuse of this Court's equitable powers.

By failing to record the Second Mortgage as was required by the agreement, GMAC did not complete the steps necessary for attachment. As a result, on March 19, 2004, the day the Isaacs filed their Chapter 7 petition, the loan was not secured by the real estate; thus, the Second Mortgage was properly classified as an unsecured claim and subject to discharge.

The fact that the Isaacs mistakenly listed the Second Mortgage on Schedule D as a secured claim does not, in itself, make it nondischargeable. What matters is that Creditor was listed somewhere in the petition, providing GMAC adequate time to file a proof of claim. *See* 11 U.S.C.A. § 523(a)(3) (West) ("A discharge under … this title does not discharge an individual debtor from any debt— … neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit … timely filing of a proof of claim …"). What's more, Isaacs completed the schedules in good faith, absent fraud or falsity. Section 727(a)(4) of the Bankruptcy Code provides:

> (a) The court shall grant the debtor a discharge, unless—
> . . .
> > (4) the debtor knowingly and fraudulently, or in connection with the case—
> > > (A) made a false oath or account;
> > > (B) presented or used a false claim;
> …

---

[3] And, it did so in clear violation of the automatic stay, as will be discussed, *infra*.

11 U.S.C.A. § 727(a)(4) (West). It is clear from the record Isaacs was completely forthright—relying on a mistaken belief that the Second Mortgage had been timely recorded. Such a mistake does not warrant a denial of discharge.

Creditor, on the other hand, was anything but forthright. GMAC was the only party to the bankruptcy proceedings in a position to know whether or not the Second Mortgage had been recorded. GMAC knew full well it was not, as evidenced by its last-ditch effort to record post-petition. Not only did GMAC act to outmaneuver the court by recording its lien after the Chapter 7 petition was filed, it remained silent throughout the proceeding, allowing an unsecured debt to be treated as if secured.

What's more, by recording its lien post-petition, GMAC committed what might be considered the cardinal sin of bankruptcy—it violated the automatic stay. The most fundamental and important tenet of bankruptcy law provides that when a debtor files a petition for bankruptcy protection, an automatic stay is invoked, preventing most actions against the debtor. *See* 11 U.S.C.A. § 362 (West). The importance of the automatic stay cannot be overstated:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Matter of Crowe & Associates, Inc.*, 713 F.2d 211, 214-15 (6th Cir. 1983) (citing the House Report for the Bankruptcy Reform Act, H.R.Rep. 95–595, 95th Cong., 2d Sess., 340, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6295, 6297). Among other things, the stay forbids "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C.A §362(a)(4) (West).

And yet, the imposition of an automatic stay need not be a death knell for creditors. The Bankruptcy Code "provides that '[o]n request of a party in interest and after notice and a hearing,

the court shall grant relief from the stay ... such as by terminating, annulling, modifying or conditioning such stay,' for reasons that include 'for cause, including the lack of adequate protection of an interest in property of such party in interest.'" *Baxter v. Sarmadi*, 602 F. App'x 322, 324 (6th Cir. 2015) (citing 11 U.S.C. § 362(d)). A debtor's lack of good faith in filing a petition may also constitute cause. *See, e.g.*, *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737–38 (6th Cir. 1994). Alas, at no time during the 2004 bankruptcy proceeding did GMAC obtain an order to modify or lift the automatic stay. By taking an act "to create, perfect or enforce" its Second Mortgage against the real estate, post-petition, GMAC plainly violated the automatic stay.

"Any action taken in violation of a stay is invalid and voidable." *Walker v. RDR Real Estate*, No. 14-2183, 2016 WL 123932, at *2 (6th Cir. Jan. 12, 2016) (citing *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993)). The Sixth Circuit has explained that "invalid" is the "appropriate adjective to use when defining an action taken against a debtor during the automatic stay," and that "invalid" means "without legal force or effect." *Easley*, 990 F.2d at 909. Violations of the stay are not incurable, however, and a *creditor* may ratify its act by seeking an order annulling the stay. *See In re Clay*, 2011 WL 1808828, at *2 (Bankr. E.D. Ky. May 11, 2011) (citing *Easley*, 990 F.2d at 910). Without such an order, violations "shall be voided absent limited equitable circumstances." *Easley*, 990 F.2d at 911. Such circumstances are not present here, and GMAC's act of recording, therefore, is without legal effect. Thus, the Second Mortgage remained unsecured at the close of the Chapter 7 case and was subject to the discharge order.

Defendant argues that regardless of what occurred during the Chapter 7 proceeding, the Circuit Court judgment entered on August 22, 2014 confirms the validity of the lien and is entitled to judicial deference. Defendant cites the *Rooker–Feldman* doctrine as preventing this Court from reviewing that state-court judgment. The doctrine emerged out of two cases, *Rooker v. Fidelity*

*Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It holds, in short, that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may [only] be reviewed by the Supreme Court." 28 U.S.C.A. § 1257 (West).

According to Defendant, because the Circuit Court judgment is a final state-court judgment, this Court may not review it. But Defendant fails to appreciate the nuance of *Rooker–Feldman* as clarified by the United States Supreme Court in *Exxon Mobile Corp. v. Saudi Basic Indus Corp.*, 544 U.S. 280 (2005), and by the Sixth Circuit in *In re Hamilton*, 540 F.3d 367 (6th Cir. 2008).

*Hamilton* presents facts similar to the ones before this Court and provides a straightforward answer to the question at hand. There, debtor filed for relief under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Kentucky. *Id.* at 369. Debtor's bankruptcy court filings did not mention the Note specifically but did acknowledge creditor's loan. *Id.* at 369-70. Despite creditor's assertion otherwise, the bankruptcy court declared the debt dischargeable. *Id.* at 370. Five months after the discharge order was entered, creditor filed a complaint against debtor in state court, seeking indemnification on the Note. *Id.* Debtor filed a pro se answer that made no reference to his discharge in bankruptcy, and the court entered judgment in creditor's favor. *Id.*

Soon after, debtor filed a complaint in the bankruptcy court seeking to "enjoin [creditor] from taking any further actions" to collect on any debts "allegedly owing from [debtor]." *Id.* at 371. In response, creditor "asked the district court to apply the *Rooker–Feldman* doctrine and abstain" from hearing the case. *Id.* Creditor argued that "the Bankruptcy Court lack[ed] jurisdiction to collaterally attack the [state-court] decision" because doing so would require it "sit as an appellate court over the state trial court." *Id.* The bankruptcy court agreed with creditor and ruled

that, under *Rooker–Feldman*, the lower Federal Courts lack jurisdiction. *Id.* Debtor appealed to the District Court, which reversed the bankruptcy court's application of *Rooker–Feldman*, holding, instead, that the state-court judgment was a modification of the discharge order and was barred under 11 U.S.C. § 524(a). Creditor appealed to the Sixth Circuit. *Id.*

In determining whether the *Rooker–Feldman* doctrine applied, the Sixth Circuit looked to *Exxon Mobile*, in which the Supreme Court clarified the extent of the *Rooker–Feldman* doctrine:

> The *Rooker–Feldman* doctrine, … is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Hamilton*, 540 F.3d at 371-72 (citing *Exxon Mobile*, 544 U.S. at 284). In finding the *Rooker–Feldman* doctrine did not prohibit federal review, the Sixth Circuit distinguished between those cases which seek "relief from injury 'caused by' the state court judgment" and those "that seek relief from other injuries, such as those caused by third parties." *Id.*

Additionally, the Sixth Circuit found the "*Rooker–Feldman* doctrine provides no protection in areas where Congress has explicitly endowed federal courts with jurisdiction." *Id.* at 372 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n. 3 (2002) (noting that "the *Rooker–Feldman* doctrine merely recognizes Congress's choice of where to vest original jurisdiction and appellate jurisdiction regarding various matters"); *In re Gruntz*, 202 F.3d 1074, 1078–79 (9th Cir.2000) (en banc)).

In considering the state-court judgment and the effect of the discharge order entered by the bankruptcy court, the Sixth Circuit turned to § 524, which provides in part:

> [a] discharge in a case under this title—... (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to

13

> collect, recover or offset any such debt as a personal liability of the debtor, *whether or not discharge of such debt is waived.*"

11 U.S.C.A. § 524(a)(2) (West) (emphasis added). The court noted that "[t]his provision was designed 'to effectuate the discharge and make it unnecessary to assert it as an affirmative defense in a subsequent state court action.'" *Hamilton*, 540 F.3d at 372-73 (citing 4 Collier on Bankruptcy ¶ 524.LH [1], at 524–57 (Sept.2005) (Lawrence P. King ed., 15th ed. rev.)). The Sixth Circuit further explained that "the concern of the drafters of § 524 was that a creditor whose debt was discharged would bring suit in a local court after the granting of the discharge, and if the debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him or her." *Id.* To avoid such abuse:

> [S]ection 524(a) declares that any judgment on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor.... Accordingly, if a creditor brings a collection suit after discharge, and obtains a judgment against the debtor, the judgment is rendered null and void by section 524(a). The purpose of the provision is to make it absolutely unnecessary for the debtor to do anything at all in the collection action.

*Id.*

Taking all of this into consideration, the Sixth Circuit held that "a state-court judgment that modifies a bankruptcy court's discharge order is void ab initio under § 524(a)." *Id.* at 375. Looking to the Ninth Circuit, the court recognized a distinction between state-court actions that modify a discharge order and those that determine dischargeability. *Id.* (citing *In re Pavelich*, 229 B.R. 777, 781 (B.A.P. 9th Cir. 1999) ("By federal statute, any judgment of any court that does not honor the bankruptcy discharge is 'void' to that extent.")). The court remanded the case to the bankruptcy court to determine whether the debt in question had in fact been discharged by that court.

In the case before this Court, it is clear the debt represented by the Second Mortgage, *an unsecured debt*, was discharged in 2004. The Order Granting Discharge provides:

> The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).
> …
> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. … A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Further, the Order provides a list of those debts that are not discharged, including debts for taxes, alimony, student loans, criminal fines, and those debts "for which the debtor has given up the discharge protections by signing a reaffirmation agreement." None of the listed exceptions apply. And it is worth noting that while Debtor's first mortgage with GMAC was reaffirmed, the Second Mortgage was not. Thus, the law is clear: because the *unsecured debt* represented by the Second Mortgage was discharged by the bankruptcy court in 2004, the Circuit Court judgment modifying that discharge is void *ab initio*.[4]

## Conclusion

After reviewing the stipulated facts, this Court finds there are no genuine issues of material fact and that Debtor is entitled to judgment as a matter of law. Based on the stipulated facts and relevant law, this Court finds that at the time Debtor filed her Chapter 7 petition, the Second Mortgage had not attached to the real estate, and the debt was properly classified as unsecured. That debt was discharged, and the Second Mortgage was therefore subject to the discharge injunction. The fact that Defendant was able to obtain the Circuit Court default judgment against Debtor has no bearing on the validity of the discharge order. The Circuit Court was without proper jurisdiction to modify the discharge injunction. As a result, Debtor's Motion for Summary

---

[4] Because the Court grants summary judgment on the aforementioned bases, the Court does not address Defendant's claim regarding the application of collateral estoppel.

Judgment is granted, and the Circuit Court judgment is void *ab initio* as it relates to the debt in question.

Furthermore, by recording the Second Mortgage after Debtor filed her Chapter 7 petition, Defendant violated the automatic stay. And by filing the foreclosure action following the Chapter 7 discharge, Defendant violated the discharge injunction. Such egregious violations are typically subject to sanctions in the form of actual damages, attorney's fees, and even punitive damages. Because Debtor has not filed a complaint alleging such damages, as would be required, this Court will forgo any ruling on damages, without prejudice.

/s/ Thomas H. Fulton
Thomas H. Fulton
United States Bankruptcy Judge

Dated: May 19, 2016

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LINDA S. ISAACS ) | Case No. 14-50679 |
| Debtor ) | Chapter 13 |
| ) | |
| LINDA S. ISAACS ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | Case No. 14-05021 |
| DBI-ASG COINVESTOR FUND III, LLC, et al. ) | Adversary Proceeding |
| Defendants ) | |

## **ORDER**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference, and the Court being duly advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that there are no genuine issues of material fact, and Debtor is entitled to judgment as a matter of law as to the claims of Debtor against Defendant. Therefore, Debtor's Motion for Summary Judgment, be and hereby is, **GRANTED,** and **THE CIRCUIT COURT JUDGMENT IS RENDERED VOID AB INITIO** as it relates to the Second Mortgage at issue.

*Thomas H. Fulton*
Thomas H. Fulton
United States Bankruptcy Judge

Dated: May 19, 2016